## Cope et al. *versus* Dodd.

13   33
132   174
13     33
28 SC ²278

A ship being about to sail for a foreign port, a person desirous of sailing in her, pays for his passage, and the receipt for the same expresses it to have been paid for his cabin passage in the ship, to sail to-day for Liverpool; this amounts to a contract, to carry the passenger to the destined port; and should the ship be lost, on the voyage, the passenger may recover from the owners of the vessel, (whose agent, the captain, received the same), the amount paid for his passage.

To prove a usage or custom, that such an agreement amounts to a mere right of passage, subject to any contingency which may occur on the voyage, the proof should be of a usage certain, uniform and so notorious as probably to be known to the parties entering into the contract; and it cannot be proved by single isolated instances.

It is not error for the Court to refuse proof, on the part of the defendants, that the Captain of the vessel had laid in the usual provisions for the voyage.

Passage money and freight are governed by the same rules of law.

Error to the Common Pleas, *Philadelphia.*

This was an action brought by George Dodd against Henry Cope and others, co-partners under the firm of H. & A. Cope & Co. to recover eighty dollars, *passage money,* paid for his passage from Philadelphia to Liverpool, in their ship, the Thomas P. Cope.— The ship sailed on the 25th November, 1846, for Liverpool, and when out four days was struck by lightning and consumed. Dodd, the plaintiff, had some goods with him, a part of which were lost. Dodd got on board an English vessel, and from that, into another, which was going to Boston. He alledged that defendants did not offer to have him carried in another vessel to Liverpool, nor pay his expenses from Boston to this place. The Thomas P. Cope was commanded by Captain Miercken. The plaintiff gave in evidence a receipt as follows:

"Received, 25th November, 1846, of George Dodd, eighty dollars, for his cabin passage, in ship Thomas P. Cope, to sail to-day, for Liverpool.
            Signed,                              H. F. Miercken."

It appeared that the passengers remained on board for six days after the ship was struck, and during this time they were maintained on board.

Captain Miercken being called by plaintiff, said: I was captain of the Thomas P. Cope when she was struck by lightning. I signed the receipt as agent of the owners, the Messrs. Cope. Mr. Dodd lost a part of his baggage.

Being cross examined, witness said: We had four full cabin passengers, for which $360 was paid; out of that, I was entitled, under my agreement with the Messrs. Cope, to all except $80, which was paid to them; what I received in this case, was expend-

ed in buying provisions for the cabin passengers, during the voyage. There was no offer to send plaintiff to Liverpool.

The defendants recalled Captain Miercken, and proposed to prove by him, that by his contract with defendants, he was entitled to the passage money of the two first cabin passengers, and one half of the passage money of the remainder, in all cases; and that under this contract, witness had received the money sued for in this case.

Plaintiff's counsel objected, and the court overruled the evidence, and defendants' counsel excepted.

The defendants' counsel asked the witness what a cabin passenger was entitled to, besides his berth; and whether or not, he was entitled to, or received, maintainance and board.

Evidence objected to; overruled and defendants' counsel excepted.

The defendants' counsel then offered to prove by witness that he had laid in the usual provisions for the voyage in this case.

Objected to; overruled and defendants' counsel excepted.

Defendants' counsel examined John Gallagher: "Payment of passage money is always in advance, at this port," &c.

Defendants' counsel offered to prove the existence of a custom, by the enumeration of particular cases, in which, under circumstances like the present, the passage money was not refunded.

Plaintiff's counsel objected; evidence overruled and defendants' counsel excepted.

Verdict for plaintiff.

It had been previously agreed that this case shall be tried on its merits, without any exception to the forms of pleading.

Errors assigned:

1. The court erred in excluding defendants' offer to prove by Captain Miercken, that, by his (the captain's) contract with defendants, he was entitled to the passage money of the two first cabin passengers, and one half the passage money, for the remainder, in all cases; and that under this contract, witness had received the money sued for in this case.

2. The court erred in refusing to permit the same witness to answer the question "what a cabin passenger was entitled to besides his berth, and whether or not he was entitled to or received maintenance and board."

3. The court erred in refusing to permit the defendant to show by the same witness, that he had laid in the usual provisions for the voyage in this case.

4. The court erred in refusing to permit the defendant to show the existence of a custom by the enumeration of particular cases, in which, under circumstances like the present, the passage money was not refunded.

[Cope *v.* Dodd.]

5. The learned Judge erred in his charge to the jury in comparing passage money to freight in the following passage of his charge, to wit: "The settled law with reference to freight is, that it is earned by the transportation and delivery of commodities; and if paid in advance, except under a special agreement, and the voyage is broken up by shipwreck, the master or owner is bound to refund the money. Passage money is subject to the same law, although the time of payment is usually before the commencement of the voyage. It is earned by the transportation and delivery of the passenger, if he comes on board at the time of sailing and lives the passage through."

6. The court erred in not returning an affirmative answer to the second point upon which the Judge was requested to charge; and in not construing the contract contained in the receipt as a question of law.

7. The verdict was against the law and the evidence.

The case was argued by *P. P. Morris,* for the plaintiff in error. To the 5th error, he cited 8 *Carr & Payne* 392, Leman *vs.* Gordon; 4 *Campbell* 241, Gillan *vs.* Simpkin; *Abbott on Shipping, p.* 287–350; and 494–5; 3 *Johns* 340–1; 5 *Taunton* 435; 3 *Barn. & Ald.* 445.

*T. S. Smith,* for Dodd, contended that the general principle as to contracts is, that a party claiming must first perform his part of the contract; and that passage money is governed by the same principle. He cited 6 *T. Rep.* 750, Brecknock Canal *vs.* Pritchard; 7 *T. Rep.* 384, Thomson *vs.* Miles; 3 *Maule & Selwyn* 267, *Pratt on Cov.* 275; 1 *Peters Adm. Dec.* 126, Howland *vs.* The Brig Lavinia. As to usage—a usage to govern must be so certain, definite and notorious, as to be understood by the parties. 1 *Gilpin* 356, U. S. *vs.* Duval.

The opinion of the court was delivered by

BELL, J.—Our attention is principally to be directed to two points: First, will this action lie against any one? and if so, then, secondly, is it well brought against the owners of the ship? Subordinate to these, are certain questions of evidence.

The answer to be returned to the first point, depends on the nature and extent of the contract made with the plaintiff below; whether it was an absolute understanding to transport him from Philadelphia to Liverpool? or, as the defendants contend, it imposed no further duty than to furnish a chance of passage, in a particular ship, which should be seaworthy, and sail on the day specified, leaving the passenger subject to any unavoidable contingency that might happen to defeat the voyage.

Were the precise meaning of the contracting parties indicated

[Cope *v.* Dodd.]

by the expressed terms of their agreement, or by unequivocal acts, there would of course be no room for legal construction. But in the absence of any such express manifestation, and of a governing custom, equivalent to it, we must have recourse to the object which led to the arrangement between the bargainors, as furnishing the most reliable standard by which to measure the extent of the obligation assumed. This will generally enable us to ascertain what in legal contemplation are the relative duties imposed by the undertaking of the parties. Apart from analogy, I think there ought to be but little difficulty felt in ascertaining the extent of these duties in the present instance. The ship, commanded by Captain Miercken, is about to sail for Liverpool; the plaintiff below was desirous of going thither; the receipt, signed by the captain, acknowledges to have received from the plaintiff, $80, "for his cabin passage in the ship Thomas P. Cope, to sail this day, for Liverpool." This is certainly expressive of an agreement to furnish a passage in the cabin of the ship to the port of Liverpool, in consideration of an ascertained price paid. Now if one seeks of another a means by which to reach a particular place, and that other agrees to furnish it, under his own guidance, it is apparent the object of both is the transportation of the former to his place of destination; and if this fail, the contract is broken, and the price to be paid for its performance unearned. Nor is the non-performance excused by inevitable accident or necessity, even though this proceed from the act of God himself. Brecknock Canal *vs.* Pritchard, 6 *T. Rep.* 750; *Platt on Cov.* 275.

The conclusion I have stated would be the result of unassisted reason. But it is also fortified by authority. In the strictly analagous case of a contract of assignment, the price of transportation is not earned until the delivery of the goods at the appointed place, even though this be prevented by a temporary prohibition of all intercourse. Barker *vs.* Hodgson, 3 *Maul & Selw.* 267.— It has been suggested by the defendants below, that freight and passage are subject to different rules, dependent on the fact that freight is not payable until after the determination of the voyage, while the fare for passengers is always pre-paid. But is the fact so? In Lemon *vs.* Gordon, 8 *Carr & Pay.* 392, Lord ABINGER said: "As to freight, the usual practice is to pay it before the vessel sails, but it is also the law, it must be paid back, if the vessel does not arrive." In truth the time of payment can work no distinction in the principle, by which the liability of the shipper is to be determined. In both freight and passage, the period of payment depends on the contract; (Watson *vs.* Duykinck, 3 *Johnson's Rep.* 340–1; Andrew *vs.* Moorhouse, 5 *Taunton* 435,) and though it be admitted that where nothing is said on the subject, freight is usually payable after delivery of the goods, and the fare of a passenger before the beginning of the voyage, yet this is

[Cope *v.* Dodd.]

practised, rather as a means of security, than with any intent to introduce or indicate a radical change in the nature of the contracts. All the cases cited on the argument shew this; no precedent has been brought to notice, favoring the opposite notion, upon which the defendants rest. In Lemon *vs.* Gordon, (supra,) it was ruled, that a wrecked passenger could not recover the pre-paid passage money from the owners of the lost ship, for want of proof of payment to them; yet the court seemed to entertain but little doubt it might be reclaimed from the captain, to whom it had been paid, though the vessel had reached the Cape of Good Hope, on her voyage to the East Indies; so Gillen *vs.* Simpkin, 4 *Camp.* 241, is founded on a concession of the ordinary right of a passenger to reclaim from the owner, for it was determined against the plaintiff, solely on the ground of a contrary custom, proved to prevail in West India voyages. And the doctrine recognized in the American case of Howland *vs.* The Brig Lavinia, 1 *Peters Adm. Dec.* 126, is in full accordance with the instructions given to the jury by the court below. "Passage money and freight," said Judge PETERS, "are governed by the same rules; it is, therefore, not due, before the passenger arrives at the port of destination, unless compensation, *pro rata itineris*, is agreed to be paid. His expenses, or the means of proceeding, must be tendered to passengers. If the passage money has been paid beforehand, it ought to be refunded, if the voyage be not completed, on the principle before stated," and he cites *Molloy de jure Maritimo* 250–260. But the defendants intimate that a different custom prevails on voyages from Philadelphia to Liverpool; and they complain that they were prevented from proving it. I think the record shews, they were permitted to make the effort and failed. After their witnesses denied all knowledge of such a custom, they proposed to prove particular instances, like the present, in which passage money was not refunded, from which they would have the jury infer a custom. The court properly refused this offer. A usage which is to govern a question of right, should be so certain, uniform and notorious, as probably to be known to, and understood by the parties, as entering into their contract. U. S. *vs.* Duval, *Gilp.* 356. And it cannot be proved by single isolated instances. Dean *vs.* Swoop, 2 *Bin.* 72. This was the attempt here, after a failure to establish the alledged usage in the ordinary way.

From what has been observed, it is obvious that if the court committed an error, in referring to the jury the task of ascertaining the disputed contract, it was a mistake of which the defendants ought not to complain, since the judge might have properly charged, that under the facts in proof, the plaintiff was entitled to be reimbursed the sum paid by him.

But are the owners of the ship liable to be called on to refund? It is evident, that Captain Miercken was their agent, in this busi-

ness.   In receiving the passage money, he must have acted in that capacity for the ship, and consequently, the means of transportation was theirs; and it is part of the case, they were entitled to, at least a portion of the sums, received for fare.   True, the captain was also entitled to a portion, but this was the result of a private arrangement between them, as employers and him as servant; and intended to remunerate *his* services in conducting the ship, and his outlay in furnishing her cabin stores.   But his right so to receive, in pursuance of this arrangement, did not make him less their servant and representative, in all that related to the vessel and her earnings; consequently with that arrangement, the plaintiff had nothing to do; and proof of it was, therefore, irrelevant.   This ruling is not in contradiction of Lemon *vs.* Gordon, (supra,) for there, so far as appears, the whole business of carrying passengers appertained to the captain of the vessel.

The court was right, too, in refusing to inquire whether Captain Meircken laid in the usual provisions for the voyage, and how far a cabin passenger was entitled to maintenance, while on board? If the view I have taken of the nature of the contract be correct, the right of the plaintiff under it would not be varied by affirmative proof of these asserted facts.   The agreement was to convey him to Liverpool; and as was said by GIBBS, C. J., in Gillam *vs.* Simpkin, it was an entire contract to carry the party, from port to port.   Every thing else was merely incidental and subsidiary; and a breach of it would be no more answered by proving that the master had made provision for the voyage, than by shewing he had shipped a competent crew, or furnished his berths with proper bedding.

Judgment affirmed.