# H. C. AMBLER v. FERD. PHILLIPS ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

$\dfrac{132 \quad 167}{f\ 28\ \mathrm{SC}\ \mathsf{:}278}$

Argued January 17, 1890—Decided February 3, 1890.
[To be reported.]

1. Before a mere usage of trade, or a custom, can become so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform and notorious as probably to be known to and understood by the parties entering into the contract: Corcoran v. Chess, 131 Pa. 356.

2. Such usage or custom cannot be established by single, isolated instances; it should be reasonable, continued and acquiesced in by all acting within its operations: Cope v. Dodd, 13 Pa. 33; McMasters v. Railroad Co., 69 Pa. 374: so established, parties may be presumed to have acted with reference to it.

3. A rule of the Bricklayers' Association, to apply to work a method of "constructive measurement," varying "from month to month, almost

from day to day," cannot be read into a written contract silent as to the method of measurement, without evidence of actual knowledge and recognition of it by the parties.

4. An engineer and surveyor testifying to thirty years experience and that he was frequently called upon to measure work such as that in controversy, it was error to refuse an inquiry of him what knowledge he had, if any, as to the alleged method of "constructive measurement."

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 108 July Term 1889, Sup. Ct.; court below, No. 1001 June Term 1887, C. P. No. 3.

On September 3, 1887, Henry C. Ambler brought assumpsit against Ferdinand Phillips and others, trading as Phillips, Townsend & Co., to recover upon a contract for excavation and stone-work done by the plaintiff for the defendants. Issue.

At the trial on October 1, 1888, it was shown that on March 28, 1887, the plaintiff made to the defendants a written proposal to do certain work in the erection of a factory building, as follows:

"GENTLEMEN: I will do the digging, furnish material, and do the mason-work for job at North Penn junction as follows:

"Digging per cubic yard, fifty cents.

"Ordinary mason-work, per perch, three dollars and twenty-five cents (for foundation with Bridgeport stone). Foundation for piers and stack with Conshohocken footings, per perch, five dollars.

"For walls above grade with Bridgeport stone, neatly pointed with cement mortar, per perch, six dollars. The work to be done in good, workmanlike manner."

This proposal was accepted by the defendants, and the work done under it. While it was in progress, Michael Andress and Henry Einwechter, were employed by the plaintiff as measurers. They certified as a final result a measurement of excavation amounting to 6,310.4 yds. and a bill for both excavation and stone-work amounting to $9,553. It was shown that under a "regulation" of the "Bricklayers' Association," they had applied a system of "constructive measurement," after a certain depth from the surface. Defendants had paid upon the work during its progress the sum of $6,000, but when the final

bill was rendered they were dissatisfied with the measurements. Ferdinand Phillips, one of defendants and an educated engineer, made measurements himself and also employed one Webster, the official surveyor of the district, to measure the work for the defendants. The result of Phillips's measurements showed 4,119 yds. of excavation and an amount for excavation and stone-work of $7,173.30. That of Webster showed 3,806.81 yds. of excavation, and an amount for excavation and stone-work of $6,985.56. The balance claimed by the plaintiff was $3,997.68; that admitted by the defendants was $1,429.47.

On behalf of the plaintiff, Andress testified that below seven feet he allowed "constructive measurements," because "parties were entitled to extra pay, unless particularly specified in the contract;" later he stated that the allowance had been made "for all below three and one half feet." On cross-examination he stated that the rule was made by the Bricklayers' Association: "We are not entitled to give prices outside the association. The percentage varies from month to month, almost from day to day; it varies from twenty-five to three hundred per cent."

Einwechter testified that the allowances varied from fifty to one hundred per cent: "I took the depth for change from actual to constructive measurement from the contract." When shown the contract, he said: "I think the extra charge started at three and one half. I don't remember whether we began at three and one half, or seven feet deep. I will say we started at three and one half, because we had to have some place to start from. . . . . The extra allowance runs from twenty-five to one hundred per cent."

For the defence, Mr. Webster, whose business was making measurements, testified: "I never furnish anything but plain measurements; never constructive. I know nothing of the rule, except that I have heard that there is some such rule. I know nothing of its terms or its application."

John H. Dye, called by the defendants, testified that he was an engineer and surveyor by profession, for thirty years had been surveyor for the city, and had frequently been called on to make measurements for parties, of work done, both for the city and for private parties. He was asked:

Q. What knowledge, if any, have you of the rule of constructive measurement?

### Charge of Court below.

Objected to.

By the court: Objection sustained, unless it is proposed to show that the witness is either a builder, or one who has employed others to build; exception.[1]

The defendants were not members of the Bricklayers' Association and had no knowledge of the rule of constructive measurements until the trial.

At the close of the testimony, the court, FINLETTER, P. J., charged the jury:

The contract of the parties is in writing, and will be your guide in reaching a conclusion.

[It is silent, however, upon an important matter, viz., the depth of the excavations.][2] The plaintiff contends that his contract was based upon the conversation that he had with Mr. Phillips, that the depth was to be from three to four feet. The defendant says he told the plaintiff that it was to be between three and four feet in some places, and deeper in others. There is no dispute that this was the subject of conversation; the dispute is as to what was said. If you are satisfied that at the time of making the contract the plaintiff did not fix the depth, then you must disregard constructive measurement; but [if you are satisfied that the depth was agreed upon, then I instruct you, as a matter of law, that under the evidence, constructive measurement must be allowed.][3]

There seems also to be a very wide difference between the parties as to the actual measurement. After all, you will see that this is only a difference in the measurement; the calculations, no matter by whom made, must be the same. There can be no doubt that if the measurements are correct, the calculations must be the same unless some clerical error has been made. [In this case, we have the calculations made by Mr. Andress and Mr. Einwechter, and by Mr. Webster and Mr. Phillips. As to the calculations made by Mr. Andress and Mr. Einwechter, there is this to be said about them: they were made as the work progressed; they made their measurements from information received from those performing the work. It was their duty representing each party to be careful. They agree in their calculations. Mr. Phillips made his calculations in the manner in which he has told you; Mr. Webster has also told you

Arguments.

how he made his calculations. Now it is your duty, gentlemen of the jury, to determine which is accurate.] [4]

If you adopt Andress's and Einwechter's as the more accurate, you will not add constructive measurement, because that is included in their calculations; [but if you take those of Mr. Phillips and Mr. Webster, you will understand that you must add what is called constructive measurement to their calculations.] [5] If you find Mr. Andress and Mr. Einwechter are correct, you will simply take their calculations and will not add anything. I believe that the only evidence of the amount which was added for the constructive measurement was given by Mr. Andress, and you will recollect what that was. . . . .

The defendants request the court to charge the jury:

1. The law between the parties to this case is the contract that they made themselves, and no variation from that contract can be made, unless it is shown that both parties agreed to it.

Answer: Refused, except as answered in the general charge.[8]

2. A custom of trade to be binding must be so universal that parties dealing with the subject must be presumed to know it, and so certain and invariable that there can be no room to doubt its application to a given case.

Answer: Refused.[9]

3. The evidence of the rule as to " constructive measurement " in this case, does not fulfil these requirements, and must be excluded by the jury in their assessment of damages.

Answer: Refused.[10]

The jury returned a verdict in favor of the plaintiff for $3,774.40. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this appeal, assigning for error, inter alia:

1. The refusal of the defendants' offer.[1]

2–5. The portions of the charge embraced in [ ] [2 to 5]

8–10. The answers to the defendants' points.[8 to 10]

*Mr. Robert H. Neilson,* for the appellants:

1. The law is that a usage, which is to govern a question of right, should be so certain, uniform and notorious as probably to be known to and understood by the parties as entering into their contract: Cope v. Dodd, 13 Pa. 33; McMasters v. Rail-

road Co., 69 Pa. 374. Moreover, the testimony to establish such a custom must be clear, uncontradictory and distinct: Adams v. Insurance Co., 76 Pa. 411; Anewalt v. Hummel, 109 Pa. 271.

2. It is also requisite that the custom should be reasonable. It can scarcely be held that a custom to treble the cost of work to a contracting party, at the dictation of a society of which he may never have heard fulfils this requirement: Jordan v. Meredith, 3 Y. 318. But, in any view of the law, the trial judge was altogether in error in that part of the charge covered by the third assignment. Conceding, for the sake of the argument, that the testimony was prima facie sufficient, and that the alleged custom was reasonable, the question whether it was established was for the jury: Adams v. Insurance Co., 76 Pa. 411; s. c. 95 Pa. 348; Anewalt v. Hummel, 109 Pa. 271; Cope v. Dodd, 13 Pa. 33; McMasters v. Railroad Co., 69 Pa. 374; Jordan v. Meredith, 3 Y. 318.

3. It follows, that it was error to exclude the testimony of John H. Dye. If the custom was "so notorious as probably to be known" to parties contracting, it would surely be known by one whose profession and practice for thirty years brought him into contact with the very question in issue. If the custom was "universal," and so it must be, Mr. Dye could never have fulfilled his duties, even once, to the satisfaction of the contractor, if he had not known it. No knowledge of the alleged custom can be imputed to the defendants, for the reason that Phillips, the only partner who took part in making the contract, testified that he never heard of it till during the trial.

There was no appearance for the defendants.

OPINION, MR. CHIEF JUSTICE PAXSON:

The contract in this case was in writing. The plaintiff agreed to do the excavating or digging for fifty cents per cubic yard. There was no provision that a higher price was to be charged for rock excavation, and the contract is silent as to the depth. The plaintiff testified that it was not to exceed four feet. The defendant, Phillips, contradicted this, and said he informed plaintiff that "at particular places the foundation would have to go exceedingly deep. . . . I asked him to give

me a general price; the foundations might be of any depth."
The plaintiff alleges that the excavation was much deeper
than four feet, and the contention is about an extra charge for
the alleged increase of depth. The plaintiff and the defend-
ants agree that no notice was given to the latter that an extra
charge would be made for such reason. The defendant Phil-
lips testified: "He (plaintiff) never said anything about extra
pay or constructive measurement." The plaintiff testified:
"I did not tell Phillips that he would have to pay extra when,
we went below three and one half feet."

The work was measured for plaintiff, not by the actual num-
ber of cubic yards, but by a rule which was designated as
"constructive measurement." This rule was given by Mr.
Andress, a measurer called as a witness by plaintiff, as follows:
"The rule of constructive measurement is made by the Brick-
layers' Association. We are not entitled to give prices out-
side of Bricklayers' Association. The percentage varies from
twenty-five per cent to three hundred per cent on constructive
measurements. It varies from month to month; almost from
day to day. As prices of labor and material advance, this
scale is advanced. All contractors and builders are aware that
certain allowances must be made during the progress of the
work." It is not even alleged that the defendants knew of
any such rule. The defendant Phillips testified at the trial:
"I heard of constructive measurement yesterday for the first
time in my life." It is almost needless to say that the defend-
ants cannot be bound by a rule of the Bricklayers' Association
of which they had no knowledge. This very point was de-
cided in Corcoran v. Chess, 131 Pa. 356. We there held that
a contract for mason work by the cubic yard meant a cubic
yard as popularly understood, and was not to be measured by
an arbitrary rule, of which the contracting party had no knowl-
edge.

It may be the Bricklayers' Association may adopt rules
which may bind themselves, and perhaps others who deal with
them with knowledge of such rules, and upon the faith of
them. But before a mere usage of trade or a custom can be-
come so firmly imbedded in the law as to govern the rights of
parties, it must be so certain, uniform and notorious as proba-
bly to be known to and understood by the parties entering into

Opinion of the Court.

the contract. And such usage or custom cannot be proved by single, isolated instances: Cope v. Dodd, 13 Pa. 33; McMasters v. Railroad Co., 69 Pa. 374. In the latter case it was held that, "to establish such custom, it should be reasonable, continued, and acquiesced in by all acting within its operations." The authorities upon this point are legion; those referred to are sufficient. When a custom is so established, parties may be presumed to have acted with reference to it, and the law will in some instances write it into their contract. But since the world began the law never wrote into any man's contract such a usage or custom as this. It has no element of certainty. In the language of plaintiff's own witness, "it varies from month to month; almost from day to day."

The defendants by their second point asked the court to instruct the jury that "a custom of trade, to be binding, must be so universal that parties dealing with the subject must be presumed to know it, and so certain and invariable that there can be no room to doubt its application to a given case." This point was refused. For the reasons above given, we think this was error. As the defendants had no knowledge of such custom, actual or constructive, they are not affected by it.

We can understand how the depth of an excavation would enter largely into its cost. The written contract was for a certain price, without regard to depth. If the plaintiff entered into it without any misrepresentation on the part of the defendants with regard to the depth, he cannot recover extra compensation. It is not enough that he entered into it carelessly, and without an examination of the plans; and, as the contract specified no depth, if the defendants desired him to go deeper than his understanding of the agreement called for, it was his plain duty to notify the defendants that he would increase the price.

We think it was error to exclude the testimony of John H. Dye. He was asked: "What knowledge, if any, have you of the rule of constructive measurement?" He had previously testified: "I am engineer and surveyor, and was for more than thirty years the city surveyor. I am frequently called upon to make measurements for parties, of work done, both for the city and for private parties." If the usage referred to was so general as to be binding upon the defendants, Mr. Dye must cer-

Statement of Facts.

tainly have heard of it from the very nature of his business; and if he had not such knowledge, how could it be imputed to the defendants?

We have not noticed the assignments in detail. What has been said sufficiently covers the important questions in the case.

Judgment reversed, and a venire facias de novo awarded.

