# Prigg v. Preston, Appellant.

*Evidence—Custom—Locality—Time and extent of custom—Knowledge of custom—Oil and gas lease.*

In order to establish the existence of a custom in an oil producing country permitting a lessee under an oil lease to erect on the land described in the lease a dwelling for the occupancy of his employees, it must be shown what oil producing countries are meant, the time when the custom began, and to whom and where such custom was known, and whether it was known to the parties at the date of the lease.

Before a mere usage of trade or a custom can become so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform and notorious as probably to be known to and understood` by the parties entering into the contract.

Where a party seeks to set up a custom which is not alleged to have existed for so long a time and so generally that it had become the recognized law of the land, it is proper to permit the opposite party to show that neither he nor other persons resident in the vicinity ever heard of the alleged custom, and that there was no such general custom in the region.

Argued April 18, 1905.   Appeal, No. 193, April T., 1905, by defendant, from judgment of C. P. Washington Co., Aug. T., 1903, No. 89, on verdict for plaintiff in case of J. O. Prigg v. John Preston and A. B. Taylor.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Ejectment for land in Canton Township.   Before TAYLOR, J.

The facts appear by the opinion of the Superior Court.

At the trial Oliver Prigg, a witness for plaintiff, was asked this question:

Mr. Prigg, had you, prior to the time your father executed this lease, any knowledge of any custom in the oil business which permitted the owner of a lease to erect a dwelling house on the farm for the use of the pumper or other employees when nothing was said about it in the lease?

Objected to as being incompetent and irrelevant, as throwing no light on knowledge which James Prigg, the lessor, may have had or as tending to contradict the existence of a custom.

The Court: A custom must be so general as to be within

the knowledge of both parties before it is a custom to a contractor. And here is the oil business opened up in this particular locality, and the custom with which the oil men seek to bind the landowner relates to such land and their business— relates to the farm, and before they could imprint on it any custom they must show it to be so general that it was within the knowledge of the people who own the farms there, that when the lease was made this custom attached to it a right to build the tenement house on the land. Now, if it were not a farmer, but a miller who had no land to lease, we might take your view of it, Mr. Linn; but here is a farmer—the very people that the oil people in the business apply this custom to, therefore it would have to be so general as to be within the knowledge of the man who had the land to lease, and we think that this is proper evidence to meet—if it does meet—the testimony of the oil men of such a custom that existed in that particular field, that it did not exist; and we overrule the objection and seal a bill for the defendants, and admit the offer.

Mr. Prigg, you may state now whether or not at and prior to the time your father gave this lease to C. C. Wolf you had ever heard of any custom in that neighborhood permitting the operator of the lease to build a house for the use of the pumper on the farm?

No, sir; I never heard of any; and I never knowed of any. [7]

Defendant presented these points:

1. If the jury believe that a custom exists in the business of exploring for and producing oil which permits a lessee under a lease of land for oil and gas purposes, to erect on the land described in the writ, a dwelling to be occupied by his employees as an incident to such leasing, then the verdict of the jury must be for the defendants. *Answer:* Affirmed, subject to what we have said on the subject of custom in this case in our general charge. [1]

2. If the jury believe that an agreement was entered into between J. O. Prigg and the McKeown Oil Company, permitting the erection of a house and barn, and that this agreement was considered necessary because the desire to erect a barn or such additional structure as was not contemplated by

the custom of the trade, then the verdict of the jury must be for the defendants. *Answer:* If the jury find from the evidence that Prigg entered into the agreement with the McKeown Oil Company to build this pumper's house and stable, and not with Mr. Lemon as a personal privilege, with this remark the point is affirmed. [2]

3. The evidence and admission of the plaintiff showing that the defendants are in possession of a farm of seventy-nine acres, including the land described in the writ under an oil and gas lease, and that their right to possession under said lease cannot be disputed until the expiration of its term, the plaintiff cannot recover in the present action of ejectment and the verdict of the jury must be for the defendants. *Answer:* This point is refused. If the jury find for the plaintiff their verdict would be for the plaintiff for the land in dispute, subject to the defendants' rights under their oil and gas lease. [3]

4. Under the law and the evidence the verdict of the jury must be for the defendants. *Answer:* Refused. [4]

Plaintiff presented this point:

There is not sufficient evidence in the case that the plaintiff ever gave a written agreement to the McKeown estate for the erection of the house in question. *Answer:* Affirmed. [5]

The court charged in part as follows:

When this agreement was signed by James Prigg he must have had in contemplation by actual knowledge, that there was such a custom existing in that business in that locality prior to his execution of the lease that allowed as a matter of right under that lease a pumper's residence on his land, or that there was a custom to that effect allowing a pumper's residence on a lease, that it was so open and notorious that he ought to have been affected with notice, that he would reasonably be presumed in law to have notice of it and therefore it being in contemplation of the parties at the time the lease was executed. Now, on that question a number of men, gentlemen of the jury, in the oil business have been called by the defendants, who say that such a custom existed not only there, but throughout all the oil field as well as this one where this farm is located; and a number of farmers who adjoin this farm and who are in the same oil field who leased their land to oil companies, say that

no such custom was ever known or ever suggested or that they ever heard of it, and that evidence, gentlemen of the jury, is admissible along with the evidence of the custom, to enable you to determine whether or not at the time James Prigg, the plaintiff's predecessor in title, because the plaintiff here is bound by everything upon it under the original lease, had in contemplation that a pumper's residence could be erected as a matter of right under that lease upon his farm when oil and gas was found or that custom prevailed so notoriously that he ought to have known it and would be bound by it in law. And if you should conclude, gentlemen of the jury, that there was no such custom notoriously in that neighborhood prior to the time that this contract was entered into, why then the plaintiff would not be bound by it as set up here, but if you find there was such a custom and he reasonably ought to have known it and would be presumed in law to have known it, and be bound by it because it was so general and notorious there, why then you would be justified in finding that it was in his contemplation when he signed this lease and would carry a verdict in this case for the defendants.] [6]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (7) ruling on evidence, quoting the bill of exceptions; (1–6) above instructions, quoting them.

*Andrew M. Linn*, for appellants.—Having established the existence of this custom as one that is certain, uniform and reasonable both parties to a contract to which it applies are presumed to know it and to be bound by it unless provision to the contrary is made in the contract: Stultz v. Dickey, 5 Binney, 285.

*R. W. Irwin*, of *Irwin & Morgan*, with him *J. M. Dickson*, for appellee.—There was not sufficient proof to establish the custom: Collins v. Mechling, 1 Pa. Superior Ct. 594: Ambler v. Phillips, 132 Pa. 167; Weld v. Barker, 153 Pa. 465; Corcoran v. Chess, 131 Pa. 356; Cope v. Dodd, 13 Pa. 33.

OPINION BY MORRISON, J., July 13, 1905:

It is conceded that the defendants were lawfully in possession of a tract of land containing seventy-seven acres, under a lease

dated May 9, 1894, by James Prigg to C. C. Wolf, for oil and gas purposes, and that the land described in the writ is included in said seventy-seven acres. It is also conceded that the plaintiff has succeeded to all the rights of said James Prigg in the said land and lease. The lease contained no reservation in terms, of the land and its possession and use for other than oil and gas operations, but such reservation is implied because the lessor only granted the right to enter upon and use the land for the purpose of operating for and removing oil and gas, for a fixed term, and this limits the rights of the lessee to such possession and use only as is reasonably necessary for such purpose. Moreover, the lease contains the following provision, to wit: "The lessee shall be liable for all damages done to crops, fences, etc., during the operations under this lease." This clearly implies that the parties contemplated the use of the land for farming purposes, but of course, such use must not interfere with the oil and gas operations.

The contention in this suit grows out of the fact that the defendants erected on the land described in the writ, which they did not use for oil and gas operations, a dwelling house and stable, as claimed, for the use of their men who worked upon the lease. The right to so use the land was attempted to be justified, at the trial, mainly on an alleged custom, said to exist in the oil regions of so using a portion of the leased premises in oil and gas operations. The case was tried on the theory, as a matter of fact, of whether or not such a custom existed in the oil regions for such a length of time and so generally that the grant must be construed as if it contained a covenant allowing the defendants to use a portion of the land for a dwelling house and stable for the use of their help.

If the case had been presented to the court below on the theory that a lease of land for the special purpose of operating thereon for oil and gas implies authority in the lessee to erect thereon dwellings for the use of the necessary man or men to operate and care for the property, and its production, a different question would have been presented, but it is one that is not raised in the record, and we assume was not presented to the court below, and, therefore, we will not now consider it.

At the trial the theory of the defense was badly shattered by the testimony of one of the defendants to the effect that

their pumper, for a considerable time, resided in a house erected on other property and that the defendants had been in the habit of renting the house and stable in question, to outside parties and receiving rent therefor. In view of this testimony it is difficult to see any merit in the defense even if the custom set up by the defendants had been sustained by the evidence, because it was not even hinted that a custom existed in the oil regions which permitted a lessee to erect buildings upon leased premises and rent them to outside parties.

The plaintiff's right to recover depends on the use and possession of all of his land which would not interfere with the lessee's operations for oil and gas, within the meaning of the grant. In our opinion this claim is well founded. Now waiving the evidence that the defendants did not use the land and buildings in dispute as a residence for their men who operated the lease, the exact question raised in the record is, did the lessees establish a general custom existing in the oil regions for so long a time that the lessor knew of it or is to be presumed to have known of it, so that it is to be read into the grant ?

The defendants' first point requested the court to charge: "If the jury believe that a custom exists in the business of exploring for and producing oil which permits a lessee under a lease of land for oil and gas purposes to erect on the land described in the lease a dwelling to be occupied by his employee as an incident to such leasing then the verdict must be for the defendants. *Answer*: Affirmed, subject to what we have said on the subject of custom in this case in our general charge." An examination of the charge discloses no error therein of which the defendants have a right to complain. In our opinion, the court might well have refused the first point. This point fails to state what oil producing territory or location is meant; the time when said custom began and to whom and where such custom was known, in short, we think it as fatally defective as the defendant's offer in Collins v. Mechling et al., 1 Pa. Superior Ct. 594, where our late Brother WICKHAM said: "This offer is open to several fatal objections. It fails to state what 'oil producing country' or territory is meant. It might have referred to the McDonald field or any one of many others, in or outside of Pennsylvania. The phrase 'known significance' is too indefinite. Known to whom and how many? The offer

should have stated, that the usage was known to the plaintiffs, or at least that it was so notorious as to affect them with the knowledge of its existence." " Before a mere usage of trade or a custom can become so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform and notorious as probably to be known to and understood by the parties entering into the contract : " Ambler v. Phillips, 132 Pa., 167 ; see also Weld v. Barker, 153 Pa., 465 ; Corcoran v. Chess, 131 Pa. 356 ; Cope v Dodd, 13 Pa. 33. Again, the offer instead of alleging a usage, existing at the time the contract was made, and therefore capable of becoming a part of it, refers to one in existence at the time of the trial, four years and nine months later. It might have been born, as were many oil fields during that interval. See also Silliman v. Whitmer & Sons, 11 Pa. Superior Ct., 243.

The above cases and the authorities therein cited demonstrate the vice of the plaintiffs' theory as to a custom so fully and clearly that we need say no more upon this subject.

The next point refers to an alleged agreement between the plaintiff and the McKeown Oil Company permitting the erection of the house and barn in question. The court practically affirmed this point, but an examination of the testimony fails to disclose any evidence that Prigg ever executed such an agreement. The agreement here referred to was in writing and Prigg's name was signed thereto, but there is no evidence that he signed it or authorized it to be signed or ratified it and therefore the court might well have refused this point. There is evidence that the plaintiff permitted one Lemon to build a house and stable upon the land in question as a personal privilege, and that Lemon was dead, and that this privilege had ceased and that it never passed to the defendants, and they had no rights under that agreement.

The third point requested the court to charge the jury that the defendants being in possession of the seventy-seven acres of land under an oil and gas lease, that their right to possession could not be disturbed until the expiration of the term and that the plaintiff could not recover in the present action. *Answer :* This point is refused : if the jury find for the plaintiff their verdict would be for the plaintiff for the land in dispute subject to the defendants' rights under their oil and gas lease.

This answer we think, under the evidence, is substantially correct.

The fourth point is: Under the law and the evidence the verdict of the jury must be for the defendants. Refused.

In his argument the learned counsel for the appellants complains of the admission of evidence on the part of the plaintiff to the effect that he and other farmers in his vicinity never heard of the custom alleged by the defendants and that there was no such general custom in that region. We fail to see the force of this objection. It is not contended that the alleged custom had existed for so long a time and so generally that it had become the recognized law of the land. In other words, no such general custom had been recognized by the courts of Pennsylvania. The learned counsel recognizing this fact sought to prove such custom by the oral testimony of witnesses so that the jury might find, as a fact, its existence. The court admitted all of his testimony on this subject and now he complains strongly because the plaintiff was permitted in reply thereto to prove that no such custom was known to himself and neighboring landowners. We think this testimony was competent. The learned counsel further argues that the court tried the case upon the theory that the custom could not be considered proved except by establishing the fact the landowner had acttual notice of it. A careful reading of the charge of the court shows that this complaint is without merit. The learned court said to the jury: " And if you should conclude, gentlemen of the jury, that there was no such custom notoriously in that neighborhood, prior to the time this contract was entered into, why then the plaintiff would not be bound by it as set up here; but if you find there was such a custom and he reasonably ought to have known it and would be presumed in law to have known it and be bound by it because it was so general and notorious there, why then you would be justified in finding that it was in his contemplation when he signed this lease and would carry a verdict in this case for the defendants." This instruction is, in substance, repeated several times in the charge; and as a matter of legal instruction, upon the evidence in this case, we think the whole charge is unexceptionable. It fully instructed the jury upon every material question in the case.

In the endeavor to avoid further contention in regard to the possession of the land in dispute, we call attention to the fact that the plaintiff's recovery only entitles him to the possession thereof in the absence of the defendants or their successors desiring to use the same for the production of oil and gas within the meaning of the grant. In short, the judgment in this case must not be construed so as to prevent oil and gas operations on the land described in the writ.

The assignments of error are all dismissed and the judgment is affirmed.