# Colonial Iron Company, Appellant, *v.* Workman & Trattner.

*Contracts—Sales—Pig iron—Trade custom.*

In an action on a written contract for the sale of pig iron, which provided that shipments should be made in the last half of 1920, it was proper to admit parol testimony to show that the trade custom required that deliveries should be made in equal monthly installments, where the contract was not sufficiently explicit on that point.

Where the issue between the parties involved distinct questions of fact as to whether the defendants broke the contracts by refusing to take the iron, and if so, the amount of damage the plaintiff suffered, and whether the plaintiffs failed to furnish the iron without any sufficient excuse, and what loss, if any, the defendants sustained as a result thereof, the case was for the jury and a verdict will be sustained.

52  COLONIAL I. CO., Appel., *v.* WORKMAN & TRATTNER.

Statement of Facts—Opinion of the Court. [81 Pa. Superior Ct.

Argued March 14, 1923.  Appeal, No. 29, March T., 1923, by plaintiff, from judgment of C. P. York County, Oct. T., 1921, No. 82, on verdict for plaintiff in the case of Colonial Iron Company v. Workman & Trattner.  Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Affirmed.

Assumpsit on written contract of sale.  Before WANNER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,000 and judgment thereon.  Plaintiff appealed.

*Errors assigned,* among others, were various rulings on evidence, charge of the court, answers to points, and refusal of plaintiff's motion for judgment non obstante veredicto.

*M. S. Niles,* and with him *C. A. May, G. E. Neff,* and *H. C. Niles,* for appellant.

*Ray P. Sherwood,* and with him *C. W. A. Rochow,* for appellee.

OPINION BY GAWTHROP, J., April 16, 1923:

The plaintiff sued to recover the difference between the market and contract prices of certain pig iron, which it alleged it had sold to the defendants, but they had refused to accept.  The first contract, dated February 28, 1920, calls for the delivery of 300 tons of 2X Norway Pig Iron at $45 per ton f. o. b. plaintiff's furnace, shipments to be made as ordered, beginning in April.  The second contract, dated March 25, 1920, calls for the delivery of 150 tons of the same kind of pig iron, shipments to be made during the last half of 1920.  There are no other specifications as to the time of shipment. Twenty-seven tons were furnished on June 1, 1920, and thirty

tons on or about June 24, 1920. Out of the failure to furnish the remaining 393 tons grows this suit.

The plaintiff averred and offered evidence to prove that the defendants refused to accept any shipments of pig iron on account of this 393 tons, although the plaintiff was ready and willing to make delivery according to the terms of the contracts and so notified the defendants. The contracts contain a provision that the plaintiff shall not be responsible for any delays in deliveries caused by war, strikes, differences with workmen, fires, accidents, or any other causes beyond its reasonable control. The plaintiff offered evidence to prove that whatever delay there was in making shipments when ordered was due to causes excusable by this provision in the contract.

In answer to the alleged breach of contract, the defendants averred and offered evidence to prove that the plaintiff's delay in making shipments was not due to causes which were excusable under the contract; that, by reason of plaintiff's failure to make shipments, they were obliged to go into the market and buy other iron at prices higher than the contract price, and thereby sustained a loss, the amount of which was set up as a counterclaim. They also set up and were permitted to prove the existence of a general trade custom in the pig iron business whereby, under all written contracts for the delivery of pig iron over a specified time as set up in the second contract, which provided for shipments during the last half of 1920, deliveries are to be made in equal monthly installments. The trial resulted in a verdict for the plaintiff for $1,000. From the refusal of a new trial and judgment n. o. v. we have this appeal.

There are three questions raised by the assignments: Did the court err, 1, in permitting the defendants to prove a trade custom requiring equal monthly shipments during the period of the contract of March 25, 1920? 2, in refusing the plaintiff's motion for judgment n. o. y.? 3, in refusing a new trial?

1. The second contract provides for "Shipment, during the last half of 1920." The appellant contends that the clear meaning of this phrase is that the plaintiff was not bound to deliver the iron until December 31, 1920, while the contention of the appellees is that the meaning of the phrase is doubtful and uncertain, that the contract fixes no specific date for shipment and that there is a general trade custom in the iron business covering shipments under such a contract, which is that there shall be equal monthly shipments during the period of the contract. If the contract in terms provided definitely as to the time when shipments should be made, the parties were bound by their covenants, the construction of which would be for the court. We think the provisions in this contract as to shipment are not so plain in their meaning that only one conclusion can be drawn as to the time of shipment, and that it was proper to admit parol testimony to show a well established general custom concerning transactions of this character in the iron trade, in accordance with which the parties are presumed to have acted. This conclusion rests upon principles declared in numerous cases in this State and on the weight of authority elsewhere. The rule in this State has been stated thus: "Before a mere usage of trade or a custom can become so firmly imbedded in the law as to govern the rights of parties, it must be so certain, uniform and notorious as probably to be known to and understood by the parties entering into the contract": Ambler v. Phillips, 132 Pa. 167; Albus v. Twomey, 273 Pa. 303. In the case at bar the custom is not repugnant to the terms of the contract nor inconsistent with them, but merely explains a provision as to shipment which is indefinite and uncertain, and gives effect to the intention of the parties by reading into the contract a usage or custom in the light of which they made the contract. It is not unreasonable nor in conflict with law. There is no merit in the contention of appellant's counsel that the evidence fails to show that the custom is certain, definite and uniform

in its terms and so universally practiced as to be notorious. It is true that the only evidence on the subject was the testimony of one of the defendants. He testified as to the existence of a general, well recognized trade custom, known generally to the trade, that when contracts for the purchase of iron are entered into without any specific date being fixed for shipment, the shipments are to be made in equal monthly installments over the period covered by the contract. The evidence was objected to as incompetent, irrelevant, immaterial and misleading. It was not suggested that it was insufficient to establish the existence of a general custom. Appellant's counsel did not cross-examine to test the knowledge of the witness on the subject and the existence of the custom was not denied by the plaintiff. While the evidence is somewhat limited, it was not on that account incompetent. The court below did not err in admitting this evidence.

2, 3. The reasons which control our disposition of the refusal of a new trial, and judgment n. o. v. will be considered together. The appellant contends that the liability of the defendants to it for the entire amount sued for is established by the correspondence and that the court should have directed a verdict for it. We agree with the learned trial judge that there is oral testimony in the case which, considered with the letters, is sufficient to support a finding by the jury that the plaintiff's admitted failure to ship pig iron when called upon was not excusable under the terms of the contract, and that the defendants were justified in refusing to take any part of the 393 tons of iron involved here. The plaintiff's letter of April 30, 1920, replying to defendants' order for a shipment, said: "We regret to advise you we are unable to make prompt shipment due to the fact that we have turned the furnace to some special iron, which we expect to continue to make for some little time." The defendants presented oral testimony of repeated requests for shipments and, because of the plain-

tiff's failure to ship, on August 15, 1920, countermanded the orders. The questions whether the defendants broke the contracts, or either of them, by refusing to take the iron and, if so, the amount of damage plaintiff suffered, and whether the plaintiff failed to furnish the iron without any sufficient excuse, and if so, what loss, if any, defendants sustained as a result thereof, were for the jury. The jury would have been justified, under the evidence, in finding for the plaintiff as to one contract and for the defendant as to the other. The amount of the verdict indicates that that is probably what they did. If they found for the plaintiff on the second contract, which was for 150 tons of iron, the plaintiff's damage, calculated at $11.75 per ton—the agreed difference between the contract price and the market price—would be $1,762.50. If they found for the defendants on the first contract and allowed them their counterclaim of $672.50, the verdict would have been $1,090. Viewed in this light there is no ground for holding that the verdict was perverse and that the court below abused its discretion in refusing a new trial on that ground. It is equally clear that it would have been error to enter judgment for the plaintiff n. o. v.

All of the assignments are overruled, and the judgment is affirmed.